UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| GREGG T SUMMERVILLE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 1:14-cv-02099-WTL-TAB |
| | ) | |
| PETER K MORAN, | ) | |
| PAUL  MORAN, | ) | |
| MORAN COAL MANAGEMENT, LLC, | ) | |
| JOHN  LEABERRY, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER ON PLAINTIFF'S FIRST AND SECOND MOTIONS TO COMPEL**

**I.      Introduction**

In two motions to compel, Plaintiff Gregg T. Summerville asks the Court to order

Defendant John Leaberry to produce a variety of documents and information.  During discovery,

Leaberry has relied heavily on state rules of professional responsibility when objecting to

requests from Summerville.  Leaberry argues that he cannot disclose certain emails and

documents or answer certain interrogatories because he does not have informed consent from his

former clients, Defendants Perter and Paul Moran.  The Court finds that he can, and grants

Summerville's first motion to compel.

Leaberry also argues that he cannot disclose certain documents because they are

protected by the attorney-client privilege.  Determining whether the attorney-client privilege

applies is a more difficult task.  For the reasons explained in this order, the Court denies the

second motion to compel, and puts procedures in place to resolve the issue of privilege.

**II.     Background**

The subject of this lawsuit is Summerville's $250,000 loan to Covington Coal, LLC (now a terminated party).  In the summer of 2012, investment banker Kent Engelmeier allegedly approached Summerville about making the loan to Covington.  Englemeier had been working with Leaberry, who is an attorney and was the CFO of Covington at the time of the loan. Leaberry facilitated the transaction between Summerville and Covington by preparing the loan documents and communicating with the parties.  He also worked with Perter and Paul Moran, who agreed to personally guarantee Covington's payments.

In the winter of 2012, the parties executed documents and Summerville funded the loan. However, Summerville claims that he has not received payments according to the loan agreement.  In 2014, Summerville brought this suit in federal court for violations of the Exchange Act and the Indiana and West Virginia Securities Act, as well as claims for breach of contract, fraud, and racketeering.  Leaberry responded to Summerville's complaint with a 12(b)(6) motion, which is still pending, and has generally resisted Summerville's discovery requests.

The Magistrate Judge discussed the discovery dispute set forth in Summerville's first motion to compel at a status conference, ordering Leaberry to produce documents to Peter Moran for review and possible production.  [Filing No. 90.]  The Court directed Summerville to file a motion to compel if documents were not produced.  The next day, Summerville filed his second motion to compel, alleging the dispute cannot be resolved without the Court's further involvement.  [Filing No. 92, at ECF p. 2.]

2

III.    **Discussion[1]**

In the Seventh Circuit, privileges asserted in federal question cases are governed by federal common law and privileges asserted in diversity cases are governed by state law. *Lorenz v. Valley Forge,* 815 F.2d 1095, 1097 (7th Cir. 1987).  In federal question cases where the same evidence is relevant to a pendent state claim, the federal common law controls. *Jaffee v. Redmond*, 51 F.3d 1346, 1350 n.5 (7th Cir. 1995); *Memorial Hosp. for McHenry County v. Shadur,* 664 F.2d 1058, 1061 n.3 (7th Cir. 1981); *In re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices & Products Liab. Litig.*, No. 3:09-MD-02100-DRH, 2011 WL 1375011, at *7 (S.D. Ill. Apr. 12, 2011).

The case at hand presents both federal and state claims.  Because the Court has subject matter jurisdiction over this case based on the federal question it presents, the Court applies federal common law.

A.    **Emails between Leaberry and Engelmeier**

Summerville's first motion to compel seeks seventeen emails between Leaberry and Engelmeier.  These emails are the fruit of Leaberry's third party request for production of documents to Englemeier and would normally be subject to disclosure to Summerville. However, Leaberry refuses to disclose these emails to Summerville, claiming that he is bound by

---

[1] The Court will not consider Summerville's October 19, 2015, supplemental authority brief. [Filing No. 112.]  As Leaberry points out, the brief makes arguments in support of Summerville's position and is thus a *de facto* reply brief.  Summerville had seven days from September 3, 2015, to file a reply in support of his first motion and seven days from September 28, 2015, to file a reply in support of his second motion.  S.D. Ind. L.R. 7-1(d)(2)(B).  Instead, Summerville's filed a reply on October 19, 2015, without requesting leave.  Summerville's reply was therefore untimely and will not be considered.

3

the Indiana and West Virginia Rules of Professional Conduct, which prohibit him from providing

the requested emails because they are confidential communications.  Summerville contends that

these emails are not protected and that he is entitled to the emails in the course of discovery. [2]

The Southern District of Indiana adopts Indiana's version of the Rules of Professional

Conduct as the standard governing ethical issues in federal court.  *Mills v. Hausmann-McNally,*

*S.C.*, 992 F. Supp. 2d 885, 890 (S.D. Ind. 2014) (citing S.D. Ind. R. of Disciplinary Enforcement

V).  Indiana Rule of Professional Conduct 1.6(a) provides: "A lawyer shall not reveal

information relating to representation of a client unless the client gives informed consent, the

disclosure is impliedly authorized in order to carry out the representation, or the disclosure is

permitted by paragraph (b)."  Paragraph (b) provides exceptions that allow an attorney to reveal

confidential information in certain situations.  In particular: "A lawyer may reveal information

relating to the representation of a client to the extent the lawyer reasonably believes

necessary . . . to establish a defense to a . . . civil claim against the lawyer based upon conduct in

which the client was involved . . . ."  Ind. R. Prof'l Conduct 1.6(b)(5).

This exception applies to the situation at hand.  Leaberry is defending a civil claim based

upon conduct in which his clients, Covington and the Morans, were involved.  Leaberry states

that his emails with Engelmeier relate to his service as counsel to Covington.  Leaberry explains

that the emails discussed the transaction between Summerville and Covington.  Leaberry never

alleges that Engelmeier sought his legal advice in these emails.  Rather, Leaberry describes

---

[2] Summerville argues that "state law, including rules of professional conduct, is irrelevant" in
federal court.  [Filing No. 93, at ECF p. 2.]  But this is not the holding in either case relied on by
Summerville.  In fact the Supreme Court clarified the opposite, "This is not to suggest that the
privilege law as developed in the states is irrelevant."  *United States v. Gillock*, 445 U.S. 360,
368 n.8 (1980).  State law does not apply here because the Court has federal question subject
matter jurisdiction.

Engelmeier as an intermediary and that his emails made arrangements for the transaction between Summerville and Covington.

Based on Leaberry's description, there is no reason to believe that the exception does not apply to Engelmeier's emails. Engelmeier's emails discussed facts related to the transaction between Summerville and Covington. Revealing the emails from Englemeier which contain information regarding his clients' involvement in the loan transaction with Summerville does not violate the Indiana Rules of Professional Conduct. *See, e.g., Lauth Grp., Inc. v. Grasso*, No. 1:07-CV-0972-SEB-TAB, 2008 WL 926631, at *2 (S.D. Ind. Apr. 4, 2008) (applying the 1.6(b)(5) exception to compel defendant's interrogatory responses). Thus, Leaberry must produce the seventeen emails from Englemeier to Summerville.

### B.  Discovery responses from Leaberry

Summerville's second motion to compel seeks approximately 1,200 documents as well as answers to certain interrogatories that Leaberry has objected to producing. Again, Leaberry argues his responses to discovery are prohibited by the Indiana and West Virginia Rules of Professional Conduct. Leaberry also argues that 479 documents are protected from disclosure by the attorney-client privilege.[3]

Leaberry responded to both of Summerville's requests for production of documents with broad objections. For example, several objections state,

> Mr. Leaberry objects to this request to the extent that it calls for the production of documents that are protected from disclosure by the attorney-client privilege, Indiana or West Virginia Rules of Professional Conduct 1.6, or the work product doctrine. Mr. Leaberry also objects to the extent that it seeks documents that are not relevant to any issue in this case.

---

[3] Summerville's argument that the crime-fraud exception applies is unavailing because he does not demonstrate *prima facie* evidence that a particular crime or fraud occurred with respect to the documents being withheld. *United States v. BDO Seidman, LLP*, 492 F.3d 806, 819 (7th Cir. 2007).

[Filing No. 92-3.]  Leaberry made similar objections to answering both sets of interrogatories.

For example,

> Objection.  This interrogatory calls for the disclosure of information that is protected from disclosure by the attorney-client privilege, Indiana and West Virginia Rules of Professional Conduct 1.6, and/or the work product doctrine.

[Filing No. 92-2, at ECF p. 4.]  Leaberry submitted a privilege log that provides information about 479 of the documents he withheld as protected by the attorney-client privilege.  [Filing No. 101-1.]  Leaberry additionally withheld an unspecified amount of documents pursuant to state ethical rules, which he describes as containing "any information pertaining to representation of his clients, Covington Coal, LLC, Paul Moran, and Peter Moran."  [Filing No. 101, at ECF p. 2.]

The Court first addresses Leaberry's confidentiality concerns.  As just discussed, there is an exception in the Indiana Rule of Professional Conduct 1.6 which allows Leaberry to reveal information about his clients' involvement in the loan transaction with Summerville.  Leaberry is not prohibited by the rule, as he asserts, from responding to Summerville's interrogatories and production requests.  Leaberry stated that he withheld all information and documents pertaining to Covington or the Morans, but does not contend that any of it was confidential.  Leaberry is simply withholding a mass amount of information related to the central players in the loan transaction with Summerville.  This is the type of situation that the exception to the ethics rule is designed to relieve.  As such, the Court concludes that disclosure will not violate the Indiana Rule of Professional Conduct 1.6.

The Court next turns its attention to the attorney-client privilege.  In the Seventh Circuit, the attorney-client privilege covers communications where (1) legal advice was sought from an attorney in the capacity of an attorney and (2) "the communication was related to that purpose and made in confidence by the client."  *Sandra T.E. v. S. Berwyn Sch. Dist. 100,* 600 F.3d 612,

618 (7th Cir. 2009) (citation omitted).  The party seeking to apply the privilege carries the

burden of establishing these essential elements.  *United States v. BDO Seidman,* 337 F.3d 802,

811 (7th Cir. 2003); *Clemmer v. Office of Chief Judge*, 544 F. Supp. 2d 722, 725-26 (N.D. Ill.

2008).  The privilege is subject to strict limitations because it has the effect of depriving the fact

finder of relevant information.  *In re Grand Jury Proceedings,* 220 F.3d 568, 571 (7th Cir.

2000); *Hamdan v. Indiana Univ. Health N., LLC*, No. 1:13-CV-00195-WTL, 2014 WL 2881551,

at *1-2 (S.D. Ind. June 24, 2014).  A client cannot conceal facts merely by revealing them to his

lawyer.  *Upjohn Co. v. United States*, 449 U.S. 383, 395–96 (1981).

　　　　As an initial observation, Leaberry did not withhold information and documents at their

narrowest possible limits.  According to Leaberry's own description, he withheld the maximum

amount of information and documents—anything related to his clients.  And contrary to the

requirements of the Federal Rules, Leaberry's objections are essentially boilerplate and not

stated with specificity.  *See* Fed. R. Civ. P. 33(b)(4) ("The grounds for objecting to an

interrogatory must be stated with specificity."); *see also* Fed. R. Civ. P. 34(b)(2)(C) ("An

objection to part of a request must specify the part and permit inspection of the rest.").

　　　　The Court's analysis of the attorney-client privilege need only discuss the first essential

element of asserting the privilege—whether the information and documents being withheld

contain legal advice, sought from Leaberry in his capacity as an attorney.  In his objections,

Leaberry presented nothing to indicate which, if any, of the answers or documents he claimed

were privileged, contained any legal advice, or involved conversations between him and his

clients.  Rather, Leaberry withheld anything related to his representation of Covington and the

Morans.  His broad description undermines his ability to prove the first element.  Leaberry

should have provided "the specific facts which support a finding of privilege under the attorney-

7

client relationship for each document." *Holifield v. United States*, 909 F.2d 201, 204 (7th Cir. 1990); *Ott v. City of Milwaukee*, No. 09-C-870, 2010 WL 5095305, at *6 (E.D. Wis. Dec. 8, 2010). He did not, and the Court is not inclined to merely take Leaberry at his word that the documents and information he withheld are protected under the attorney-client privilege. The burden is on Leaberry to prove the essential elements of the privilege. Leaberry's conclusory assertions in his objections are inadequate to establish the attorney-client privilege. *See Ott*, 2010 WL 5095305, at *7 (granting plaintiff's motion to compel because defendants failed to provide details about the documents being withheld).

Leaberry's privilege log is also inadequate. The entries in the privilege log do not describe the documents as relating to legal advice, communications or conversations between attorney and client, or discussions of ongoing legal concerns. Leaberry provides simple, often one-word descriptions of the documents such as "email" and "draft correspondence." [Filing No. 101-1.] Such vague and generic descriptions do not allow the Court or Summerville to assess Leaberry's claim of privilege. These descriptions give no indication as to whether documents were created by or for an attorney, or whether they were intended to be kept confidential. The deficiencies in Leaberry's privilege log make it impossible for the Court to uphold his claims of attorney-client privilege. *See RBS Citizens, N.A. v. Husain*, 291 F.R.D. 209, 219 (N.D. Ill. 2013) ("Without any explanation of what the documents are, who authored them, or the purpose for which they were created, the Court determines that the vast majority of the disputed documents—mostly spreadsheets containing financial data—are not in fact privileged.").

Presented with inadequate objections and an inadequate privilege log, the Court has insufficient information to determine whether the first essential element of the attorney-client

privilege has been met.  *See Holifield,* 909 F.2d at 204 ("Any attempt to make this type of determination without this factual foundation amounts to nothing more than a waste of judicial time and resources.").  Leaberry has not met his burden to demonstrate that the attorney-client privilege applies.

While Leaberry's failure supports a finding that he waived the privilege, imposing a waiver because his objections and privilege log are inadequate is severe, absent bad faith, willfulness, or fault.  *Sajda v. Brewton,* 265 F.R.D. 334, 338 (N.D. Ind. 2009); *see also Am. Nat. Bank & Trust Co. of Chicago v. Equitable Life Assur. Soc. of U.S.,* 406 F.3d 867, 877 (7th Cir. 2005) ("Discovery sanctions may only be imposed where a party displays wilfulness, bad faith, or fault.").  Because the Court is not convinced that Leaberry's inadequate objections and privilege log are a result of bad faith, willfulness, or fault, the Court declines to impose a waiver.

The purpose of discovery is to facilitate an open development of the facts.  Leaberry has a duty to act in good faith in complying with his discovery obligations.  *Johnson v. J.B. Hunt Transport, Inc.,* 280 F.3d 1125, 1132 (7th Cir. 2002).  Federal Rule of Civil Procedure 1 states that the Rules "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding."  The committee notes on the 2015 amendment to Rule 1 explain that just as the rule applies to the Court, "so the parties share the responsibility to employ the rules in the same way."  "Effective advocacy is consistent with—and indeed depends upon—cooperative and proportional use of procedure."  *Id.*

This Court ordered Leaberry to communicate with the Morans and Covington in an effort to obtain their consent.  Based on the briefs, it is not apparent that Leaberry has made a good

faith effort to make this communication.[4]  Nor is it apparent that Summerville gave Leaberry a chance to try before filing his second motion to compel.  What is apparent is that Leaberry wishes to withhold an unreasonably large amount of information from Summerville.  While Leaberry has a responsibility to maintain the confidences of his clients, he also has a responsibility to cooperate with discovery as a litigant.  Leaberry's uncooperative actions are contrary to the foundational rule of federal civil procedure.  Summerville was likely aware that efforts to discover an attorney's documents and correspondence would run up against privilege protections, but the situation at hand is avoidable.  What follows is the Court's plan for cooperative and proportional discovery.

## IV.    Conclusion

For the reasons stated above, the Indiana Rules of Professional Conduct do not prohibit Leaberry from disclosing Englemeier's emails to Summerville.  Thus, Summerville's first motion to compel [Filing No. 86] is granted, and Leaberry should produce the seventeen emails subject to that motion within fourteen days.

As for Summerville's second motion to compel, again the Indiana Rules of Professional Conduct do not prohibit Leaberry from disclosing information to Summerville.  However, the Court cannot determine whether the attorney-client privilege should apply to the interrogatories or the 479 documents mentioned in the inadequate privilege log and declines to impose a waiver.

---

[4] The Morans' response explains that they are merely withholding their consent because Leaberry has not adequately communicated with them about the information he is protecting. [Filing No. 89, at ECF p. 1.]  It is not enough for Leaberry to raise the issue of informed consent without making a good faith effort to obtain it.  As discussed during the status conference, the exchange of a small amount of information from Leaberry to the Morans could have likely dispelled the current state of confusion and frustration and perhaps eliminated this dispute.

As such, Summerville's second motion to compel [Filing No. 92] is denied.  However, the Court orders the following in addition:

1. Leaberry shall make a good faith effort to communicate with the Morans and Covington to obtain their informed consent for disclosing the documents and information. Within twenty-one days, Leaberry shall advise Summerville in writing of the efforts he has taken to fully comply with this order and whether he has obtained consent.  If consent is obtained, Leaberry shall, by this same deadline, supplement his discovery responses to Summerville and the parties shall advise the Court in writing of this fact.

2. If consent is not obtained, Leaberry shall provide Summerville with a "quick peek" of a selection of twelve documents from the privilege log for review.  Within twenty-one days of receiving Leaberry's notice that consent was not obtained, Summerville will select and advise Leaberry in writing of the twelve documents he wishes to review.  Leaberry will then produce the documents to Summerville within twenty-one days of receiving the request.  Once Summerville has reviewed the documents, the parties shall meet and confer, then file a status report advising the Court whether Summerville wishes to pursue disclosure of more documents listed in the privilege log and whether the parties can come to an agreement on production.  This arrangement will allow Leaberry to produce some documents for review while avoiding the excessive costs of a full privilege review and without waiving privilege.

3. If the parties have gone through all these steps and still cannot come to an agreement on what documents to produce, upon request, the Court will make an *in camera* review of a sampling of the documents to determine the applicability of the attorney-client privilege.  The Court will then order Leaberry to produce additional documents if the assertion of privilege is not found to be wholly appropriate.

As a final note, the Court strongly encourages counsel to read the committee notes on the 2015 amendment to Rule 1 and recognize their shared responsibility to cooperate and employ the Federal Rules.  "Rule 1 of the Federal Rules of Civil Procedure has been expanded by a mere eight words, but those are words that judges and practitioners must take to heart."  Chief Justice John G. Roberts Jr., *2015 Year-End Report on the Federal Judiciary* (Dec. 31, 2015, 6:00 PM), http://www.supremecourt.gov/publicinfo/year-end/2015year-endreport.pdf.

Dated:  1/20/2016

Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Distribution:

Richard N. Bell
BELL LAW FIRM
richbell@comcast.net

Jacob R. Cox
COX LAW OFFICE
jcox@coxlaw.org

Dina M. Cox
LEWIS WAGNER LLP
dcox@lewiswagner.com

Joseph Neal Bowling
LEWIS WAGNER LLP
nbowling@lewiswagner.com