UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| GREGG T. SUMMERVILLE, | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
|      vs. | ) Cause No. 1:14-cv-2099-WTL-TAB |
| | ) |
| PETER MORAN, et al., | ) |
| | ) |
|    Defendants. | ) |

### ENTRY ON MOTION FOR PARTIAL SUMMARY JUDGMENT

This cause is before the Court on the motion for partial summary judgment filed by Plaintiff Gregg Summerville (Dkt. No. 29).[1] The motion has been briefed in two parts—the motion as it relates to Defendant John Leaberry and the motion as it relates to the remaining Defendants. The Court, being duly advised, rules as follows.[2]

### I. SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[3] In ruling on a motion for summary judgment, the

---

[1] The motion for partial summary judgment was filed with regard to the original complaint. While the Plaintiff subsequently filed an amended complaint, the relevant claims have not changed and the bulk of the briefing relating to the instant motion took place after the amended complaint was filed; accordingly, the Court deems the motion as directed toward the amended complaint.

[2] The Court notes that the Plaintiff improperly filed a response to Defendant Leaberry's surreply without seeking leave of Court (Dkt. No. 114). The Court has not considered this improper filing.

[3] The Plaintiff cites to *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), for the proposition that "the burden on the moving party may be discharged by showing—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." As *Celotex* makes clear, that is true when the non-moving party does not have the burden of proof on an issue. Here, however, the Plaintiff has the burden of proof on each of his

admissible evidence presented by the non-moving party must be believed and all reasonable inferences must be drawn in the non-movant's favor. *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007); *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) ("We view the record in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor."). However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490. Finally, the non-moving party bears the burden of specifically identifying the relevant evidence of record, and "the court is not required to 'scour the record in search of evidence to defeat a motion for summary judgment.'" *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citation omitted).

## II. FACTUAL BACKGROUND

The following facts are not disputed for purposes of this ruling.

Defendants Peter Moran and Paul Moran are members of Covington Coal, LLC. Moran Coal Management, LLC, is owned by Peter Moran. In 2012, the Morans hired Winchester Global Capital, LLC ("Winchester"), an investment banking firm, to find investors for Covington Coal. Kent Englemeier, the President and CEO of Winchester, is a longtime friend of Plaintiff Gregg Summerville. Englemeier approached Summerville about investing at least $1 million in Covington Coal; eventually, he told Summerville that Winchester itself would be

---

claims; accordingly, he is entitled to summary judgment on a claim only if he points to evidence of record sufficient to satisfy his burden of proof as to that claim and the Defendants are unable to point to evidence that creates a dispute of material fact with regard to at least one element of the claim.

2

loaning approximately $1.5 million to Covington Coal under the same terms as those offered to Summerville.

Summerville decided to loan Covington Coal $250,000; Paul and Peter Moran guaranteed the loan. The fact that Winchester was investing $1.5 million in Covington Coal was an important factor in Summerville's decision. Summerville also relied upon the financial statement of Paul Moran, one of the guarantors of the loan, which indicated that he had a net worth in excess of $25 million. He did not.

A week before Summerville's loan to Covington Coal closed, Defendant John Leaberry emailed Summerville and told him that Winchester's $1.5 million loan and $500,000 equity investment in Covington Coal had "closed and funded" the previous Friday. While the paperwork had been executed and Winchester had tendered two checks to Covington Coal, one for $1.5 million and the other for $500,000, neither of the checks had been deposited at that point. In fact, the $500,000 was returned for insufficient funds and the $1.5 million check was never deposited.

Summerville's loan of $250,000 closed and guarantees were executed by the Morans in November 2012.

In January 2013, a lawsuit was filed in federal court in West Virginia against the Morans alleging "a series of fraudulent and material events by [the Morans] which occurred in 2009-2010 and predates [sic] the loan by Summerville." Dkt. 30 at ¶ 23. The Morans had not disclosed to Summerville the fact that these allegations of fraud had been made against them and legal action had been threatened prior to the closing of the loan from Summerville. The West Virginia lawsuit did not involve Covington Coal.

Covington Coal defaulted on the loan from Summerville and the Morans failed to cure the defaults as guarantors. Summerville hired counsel, who drafted a complaint and informed the Defendants of his intent to sue. Prior to filing his complaint, Summerville entered into a settlement agreement with the Morans, Covington Coal, and Moran Coal Management, LLC ("the Settling Defendants"). Pursuant to the agreement, the interest rate on the Summerville loan was increased, Moran Coal Management, LLC, an entity owned by Peter Moran, would become an additional guarantor, and the Morans and Covington Coal would stipulate to certain "Admissions of Facts" and agree to a "Consent Judgment" of $500,000.[4]  Dkt. No. 30 at ¶ 34. To satisfy the "Consent Judgment," Covington Coal or its guarantors would have to "timely pay $300,000 plus interest." *Id.* at ¶ 35. The Settling Defendants have not made any of the payments required by the settlement agreement or its subsequent amendment (hereinafter referred to collectively as the "Settlement Agreement").

### III. DISCUSSION

As noted above, Summerville's motion for partial summary judgment has been briefed in two parts. Defendant John Leaberry has responded with regard to the allegations against him and the other Defendants have responded with regard to the allegations against them. The Court will address the Defendants' arguments, in turn, below.

**A. Motion for Summary Judgment as to John Leaberry**

Summerville alleges that Leaberry made a material misrepresentation in the course of soliciting the loan to Covington Coal from him. Specifically, he points to the email from

---

[4] It is not clear to the Court why this was referred to as a "consent judgment"; no suit had been filed at the time, so there was nothing in which "judgment" could be entered.

Leaberry in which he stated that the loan from Winchester had "closed and funded."[5]

Summerville alleges that because the checks from Winchester had not been deposited when this statement was made, the Winchester loan had not "funded." Therefore, this was a misrepresentation by Leaberry that constituted a violation of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Exchange Act Rule 10b-5, 17 C.F.R. § 240.10b-5 (hereinafter collectively referred to as the "Exchange Act");[6] a violation of the Indiana Securities Act, Ind. Code § 23-19-5-1 et seq.[7]; a violation of the West Virginia Securities Act, W. Va. Code § 32-4-401 et seq.; and common law fraud.[8]

There is no need to dwell long on Summerville's motion as it relates to Leaberry. In order to succeed on his claim under the Exchange Act, Summerville must prove that Leaberry "either knew the statement [at issue] was false or was reckless in disregarding a substantial risk

---

[5] It is not clear from Summerville's brief whether he also asserts that Leaberry is liable to him for the allegedly false statements in the financial statement of Paul Moran and the failure to inform Summerville about the fraud allegations against the Morans that eventually formed the basis of the West Virginia lawsuit. In any event, Summerville points to no evidence of record that demonstrates that Leaberry had anything to do with the financial statement or that he was aware of the fraud allegations against the Morans or their possible materiality to Summerville's loan to Covington Coal. Instead, he points only to the admissions of the Settling Defendants, which are hearsay and therefore not admissible evidence against Leaberry.

[6] The Court notes that there does not appear to be any evidence of record that demonstrates that Summerville actually purchased a security from Covington Coal which is, of course, an element of his claim under the Exchange Act. Rather, he alleges only that at some point in the parties' negotiations regarding the loan, he "was also to be given warrants for a small equity position in Covington that [he] could exercise under certain conditions." Dkt. No. 30 at ¶ 6. Whether that was, in fact, part of the final transaction, and whether that—or perhaps the loan itself—constitutes the purchase of a security by Summerville for purposes of the Exchange Act, is unclear. Similarly, Summerville states that "[l]iability under the Indiana and West Virginia Securities Acts occurs when . . . the securities were purchased by the plaintiff . . .," *id.* at 17, yet he has pointed to no evidence that such a purchase occurred in this case.

[7] Summerville improperly cites to and quotes from Ind. Code § 23-2-1-12 and -19, both of which were repealed in 2008.

[8] Leaberry's response brief also addresses Summerville's claims for restitution and unjust enrichment; however, Summerville does not seek summary judgment against Leaberry on those claims. *See* Dkt. No. 30 at 27 (setting forth which claims are asserted against each Defendant).

5

of its being false." *City of Livonia Employees' Ret. Sys. & Local 295/Local 851 v. Boeing Co.*, 711 F.3d 754, 756 (7th Cir. 2013) (citations omitted). "'Recklessness' in this context has been defined in a number of cases as 'an extreme departure from the standards of ordinary care . . . to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it.'" *Id.* (citations omitted). While Summerville argues that there is no such scienter requirement under the Indiana and West Virginia statutes, it is a defense under both statutes that the defendant did not know, and in the exercise of reasonable care could not have known, that the representations at issue were false or misleading. Ind. Code § 23-19-5-9; W. Va. Code § 32-4-410. Common law fraud also requires that the false statement be made with knowledge or reckless ignorance of its falseness. Therefore, Leaberry's scienter is relevant to all of the claims against him.

In response to Summerville's motion for partial summary judgment, Leaberry has submitted a declaration in which he denies knowing that the "closed and funded" statement in his email was false and denies knowing that Winchester's checks were not good until after Summerville's loan to Covington had closed. These denials, made under penalty of perjury, are sufficient to create a factual dispute and therefore defeat Summerville's motion for summary judgment with regard to those alleged material misrepresentations by Leaberry.[9] The evidence

---

[9]Summerville "urges the Court to find Leaberry's affidavit inadmissible as creating 'sham' issues" and argues that "[e]xtending the 'sham' affidavit rule in this case would serve the same purpose, namely, to prevent Leaberry from creating a factual dispute for the sole purpose of arguing that summary judgment is inappropriate until the dispute is settled." Dkt. No. 108 at 3. The "sham affidavit" rule applies when an affidavit is submitted in opposition to a motion for summary judgment that contradicts deposition testimony given by the affiant. In one of the cases cited by Leaberry, the court extended the rule to apply to statements in an affidavit that directly contradict a public record. Presumably Summerville is arguing that the bank records in this case are analogous to a public record and therefore Leaberry's affidavit cannot be used to create an issue of fact regarding what the bank records show—that the $500,000 check was returned for insufficient funds. But Leaberry does not dispute that fact; nor does he dispute the fact that the

submitted by Summerville is not such that it establishes, as a matter of law, that Leaberry acted knowingly or recklessly or that he would have discovered the requisite facts through the exercise of ordinary care; rather, those are determinations to be made by the trier of fact. That is virtually always the case in a fraud case in which the defendant denies committing fraud, *see F.T.C. v. Think Achievement Corp.*, 312 F.3d 259, 261 (7th Cir. 2002) ("It is rare for a judge to enter summary judgment in favor of the plaintiff in a fraud case . . . ."), and this case is no exception. Accordingly, Summerville's motion for summary judgment as to Leaberry is **DENIED**.

### B. Motion for Summary Judgment Regarding the Remaining Defendants

Summerville initially moved for summary judgment against the Settling Defendants on all of the claims that are now asserted in the amended complaint. This was curious, in that those claims included both a claim for breach of the Settlement Agreement and the claims that were resolved by the Settlement Agreement. Summerville could assert those claims in the alternative, but he could not recover both under the Settlement Agreement and on the underlying claims, which is what he appeared to be attempting to do in his motion. That problem has been eliminated, however, by the fact that Summerville and the Settling Defendants have reached an agreement to settle this litigation by means of entry of judgment against the Settling Defendants.

The only issue that remains to be resolved with regard to the Settling Defendants is whether judgment should be entered in the amount of $300,000 or $500,000. The parties have agreed that the Court should resolve this issue by resolving the question of what damages Summerville is entitled to for his claim for breach of the Settlement Agreement. Accordingly,

---

$1.5 million check was never deposited. Rather, he disputes Summerville's assertion that the loans were not "funded" once the checks were tendered because they had not yet been deposited, and he disputes Summerville's assertions regarding Leaberry's own knowledge regarding whether the checks were good. The meaning of the word "funded" in this context and Leaberry's scienter are both questions of fact that cannot be resolved on summary judgment.

the Court will consider Summerville's motion for summary judgment with regard to the Settling Defendants only as to that claim.

As noted above, pursuant to the Settlement Agreement, the interest rate on the Summerville loan was increased, Moran Coal Management, LLC, an entity owned by Peter Moran, became an additional guarantor, and the Morans and Covington Coal stipulated to certain "Admissions of Facts." In addition, the Settlement Agreement provided that the Morans and Covington Coal "each consent to an Agreed Judgment in the amount of $500,000," although no case was pending, so there was nothing in which a judgment could be entered. The Settlement Agreement further provided for the execution of a promissory note in the amount of $300,000. As long as payments were made on the promissory note as set forth in the Settlement Agreement, the "Agreed Judgment . . . [would] not be recorded or disclosed to nonparties." In the event of default, Summerville had the right, at his option, to (1) declare the "Agreed Judgment" to be immediately due; (2) file an adversary proceeding in the Bankruptcy [if the default was the filing of bankruptcy by a guarantor]; and/or (3) "[e]nforce or avail itself [sic] of any and all remedies at law or equity to peruse [sic] collection and/or execution of the Agreed Judgment." Dkt. No. 1-5.

The Settling Defendants argue that they agreed to settle their dispute with Summerville for $300,000 (plus interest and payable as set forth in the promissory note), and that the additional $200,000 that they would owe pursuant to the "Agreed Judgment" if they defaulted on the promissory note is an unenforceable penalty under Indiana law. The Court agrees.

"Settlement agreements are governed by the same general principles of contract law as any other agreement" *Georgos v. Jackson*, 790 N.E.2d 448, 453 (Ind. 2003). "A contractual provision is an unenforceable penalty clause when its sole purpose is to secure performance of

8

the contract." *JPMorgan Chase Bank, N.A. v. Asia Pulp & Paper Co.*, 707 F.3d 853, 867 (7th Cir. 2013).

> In determining whether a stipulated sum payable on a breach of contract constitutes [enforceable] liquidated damages or [an unenforceable] penalty, the facts, the intention of the parties and the reasonableness of the stipulation under the circumstances of the case are all to be considered. If the sum sought by a liquidated damages clause is grossly disproportionate to the loss that may result from a breach of contract, we should treat the sum as a penalty rather than liquidated damages. Liquidated damages provisions are generally enforceable where the nature of the agreement is such that when a breach occurs the resulting damages would be uncertain and difficult to ascertain. However, to be enforceable the stipulated sum must fairly be allowed as compensation for the breach. . . . If there is uncertainty as to the meaning of a liquidated damages clause, classification as a penalty is favored.

*Olcott Int'l & Co. v. Micro Data Base Sys., Inc.*, 793 N.E.2d 1063, 1077 (Ind. Ct. App. 2003). The key distinction is whether the provision at issue "indicates an intent to penalize the purchaser for a breach rather than an intent to compensate the seller in the event of breach." *Dean V. Kruse Found., Inc. v. Gates*, 973 N.E.2d 583, 592 (Ind. App. 2012).

In this case, it is clear that the parties agreed to settle their dispute for $300,000, to be payable according to the terms set forth in the promissory note. While Summerville argues that the $500,000 provided for in the Agreed Judgment is enforceable as liquidated damages, he does not even attempt to argue that the extra $200,000 is related to damages he would suffer in the event of a breach by the Settling Defendants, and with good reason. The fact that the Settlement Agreement provides that the Settling Defendants would owe Summerville $500,000 if they made no payment at all under the promissory note or if they made all but the very last payment under the promissory note demonstrates that the provision is a penalty designed to compel the Settling Defendants to perform, rather than an attempt to compensate Summerville for the cost to him of a breach.

Summerville argues that $500,000 is not greatly disproportionate to his loss, and therefore not a penalty, because he believes he would have been entitled to judgment in excess of $800,000 for the claims in his complaint. Summerville is focused on the wrong "loss"; the question is not what Summerville may have given up by settling his case, but what loss he suffered when the Settling Defendants failed to perform under the Settlement Agreement. That loss can be readily calculated by the cost of Summerville's loss of the use of the funds he was to receive under the Settlement Agreement—interest, in other words, which is provided for in the agreement itself.

## V.  CONCLUSION

For the reasons set forth above, Summerville's motion for partial summary judgment (Dkt. No. 29) is **DENIED** in its entirety. Specifically, the motion is **DENIED** as to Summerville's claims against Defendant Leaberry. Further, as set forth above, the $500,000 provision in the Settlement Agreement is an unenforceable penalty under Indiana law. Accordingly, Summerville's motion for partial summary judgment with regard to Peter Moran, Paul Moran, and Moran Coal Management, LLC, is **DENIED** to the extent that it seeks to enforce that provision and **DENIED AS MOOT** in all other respects in light of the parties' agreement to settle this case. The Settling Defendants and Summerville shall confer and attempt to agree on the amount of the agreed judgment to be entered, including attorney's fees, costs, and pre-judgment interest. They shall either file an agreed judgment or a notice to the Court that they are unable to reach an agreement along with a proposed schedule for briefing the remaining disputes **within 28 days of the date of this Entry**.

SO ORDERED: 3/1/16

_William T Lawrence_

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic notification